UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN (Green Bay)

UNITED STATES OF AMERICA,

           Plaintiff,

     v.                                  Case No. 1:20-cr-00113-WCG

RONALD PORF ORTEGA,

           Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

### I.    INTRODUCTION

The Government filed a two-count Indictment on July 14, 2020 against Ronald Porf Ortega. [R: 6]. Pursuant to the Plea Agreement, Mr. Ortega entered a guilty plea to Count One of the Indictment. [R: 18].

### II.    DISCUSSION

The Court considers the factors set forth in 18 U.S.C. § 3553(a) when imposing sentence. After considering these factors, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing: just punishment, deterrence, protection of the public, and provision of correctional treatment." 18 U.S.C. § 3553(a).

The Government and Mr. Ortega agree that the mandatory minimum imprisonment sentence of 180 months (15 years) is an appropriate sentence. [R. 18, ¶21]. Mr. Ortega leaves the length of supervised release to the Court. The specific conditions of supervised release outlined in the PSI are crucial in making this proposed sentence sufficient, but not greater than necessary, to provide just punishment, deterrence, and protection of the public. More specifically, the term of supervised release includes compliance with the Sex Offender Registration and Notification Act, participation in an approved program of sex offender/mental health treatment, participation in a computer and internet monitoring restriction programming, and no intentional one-on-one contact with unrelated children under the age of 18, unless approved in advance. [PSI: 18, ¶ 3; PSI: 21, ¶¶9-11]. Such a sentence justly punishes Mr. Ortega, deters others and Mr. Ortega himself from

1

engaging in similar conduct, protects the public, and forces Mr. Ortega to engage in the treatment necessary to address his underlying psychological and psychosexual issues.

**A. Nature and Circumstances of the Offense**

Throughout June 2020, law enforcement participated in "Operation Kick Boxer," which is a Federal Bureau of Investigation initiative that is comprised of Child Exploitation and Human Trafficking Task Forces. [PSI: 4, ¶12]. The initiative targets the exploitation and abuse of children. *Id.* While working in this capacity, law enforcement working in Winnebago County, Wisconsin, contacted Mr. Ortega through the Kik Messenger application. *Id.* at ¶13. Mr. Ortega operated under the username "hityourspots," and law enforcement posed as "Lisa," a 40-year-old female with a 15-year-old daughter named "Kay."[1] *Id.*

Mr. Ortega initially messaged Lisa due to curiosity and interest in her profile image of a platypus. However, the conversation quickly turned sexual in nature. Over the course of the communications, Mr. Ortega voiced his desire to have sexual intercourse with Lisa's 15-year-old daughter, Kay. *Id.* at ¶14. Mr. Ortega shared images of child pornography with Lisa, and he described a desire to perform and digitally record similar sexual acts with Kay. *Id.* Mr. Ortega then planned such an encounter with Lisa and Kay. *Id.* He made a hotel reservation at the Hilton Garden Inn in Oshkosh for July 6, 2020. *Id.* at ¶15. Mr. Ortega also purchased sex toys and lingerie for Lisa and Kay to utilize during the sexual encounter. *Id.* Mr. Ortega continually communicated with Lisa until shortly before his arrest.

On July 6, 2020, investigators followed Mr. Ortega from the hotel to a prearranged location at a park-and-ride along I-41. *Id.* at ¶16. After identifying Mr. Ortega, law enforcement conducted a traffic stop and arrested him. *Id.* Officers located the sex items discussed between the parties in the vehicle within separate bags, one labeled for Lisa and one for Kay. *Id.* Mr. Ortega was cooperative with his arrest. He further agreed to be transported to the Winnebago County Sherriff's Office to speak with law enforcement. *Id.* Mr. Ortega waived his *Miranda* rights, and discussed his criminal involvement in detail. *Id.* at ¶17. Mr. Ortega clearly outlined the knowledge of his guilt to law enforcement. *Id.* Mr. Ortega further acknowledged transporting a web camera and electronic devises for the purpose of recording his sexual encounter with Kay. *Id.*

---

[1] Both "Lisa" and "Kay" are fictional personas created by law enforcement for investigative purposes. For the remainder of this memorandum, however, Mr. Ortega will refer to the individuals by name without the added use of quotation marks.

**B. History and Characteristics of the Defendant**

Mr. Ortega was born on October 4, 1973 in East Chicago, Indiana. [PSI: 9, ¶43]. He is the sole child of Phyllis and Ronald G. Ortega. *Id*. He resided in Lake County, Indiana, and the Northern District of Indiana, for the vast majority of his life. *Id.* In the beginning, Mr. Ortega lived a pleasant life. *Id.* Mr. Ortega and his father had a close relationship, and Mr. Ortega recalls spending time fishing and camping with him routinely. *Id.* Mr. Ortega had the opportunity to take various family vacations, including to both Disneyland and Disney World. *Id.*

In Kindergarten, Mr. Ortega experienced physically abusive conduct from his teacher. *Id.* at ¶45. In 1979, Mr. Ortega was first exposed to death with the passing of his favorite aunt. *Id.* at ¶44. His grandmother died the next year, and his uncle shot himself in the head—Mr. Ortega personally witnessed this death scene at the age of seven. *Id.*

Approximately two years later, Mr. Ortega was sexually assaulted by his male neighbor *Id.* at ¶46. The neighbor forced Mr. Ortega into performing fellatio and sodomy. *Id.* This caused Mr. Ortega to question his own sexuality and constantly worry that he was going to contract AIDS. *Id.* The epidemic was at the forefront of the nation's headlines at the time.

Shortly after the sexual assault involving Mr. Ortega's neighbor, his female cousin sexually assaulted him. *Id.* A year or so later, the same female cousin made sexual allegations against Mr. Ortega's father. *Id.* Based on those allegations, law enforcement forcibly arrested his father at gunpoint in front of the ten-year-old Defendant. This chaotic scene led to the absence of his father for the next four years had a lasting impact on Mr. Ortega. Mr. Ortega had to relive the moment two years later when a local prosecutor presented the case against his father to the entire school. *Id.* at ¶47. With his father no longer able to take him camping and fishing, Mr. Ortega enrolled in the Boy Scouts of America, where he was sexually assaulted by his Scoutmaster. *Id.* Also around this time, Mr. Ortega was encouraged to participate in an ongoing sexual relationship with a mother and her daughter. *Id.* at ¶64. Mr. Ortega reports that he was the youngest participant involved in these encounters.

Mr. Ortega's childhood financial circumstances changed drastically without his father's income. *Id.* at ¶49. Mr. Ortega watched his mother struggle to provide for the family. Mr. Ortega recalls instances of his mother having emotional breakdowns due to the financial stressors facing the family. Mr. Ortega admires the grit, determination, and loyalty his mother exhibited during

3

those difficult times. It was during these times that Mr. Ortega developed a close and lasting relationship with his mother that continues to this day. *Id.*

Mr. Ortega's father returned home in 1987. *Id.* at ¶48. Mr. Ortega learned how to play the guitar from his father's instruction. *Id.* The PSI reports that a charge against Mr. Ortega's father for Sexual Battery was issued but later dismissed in September of 2004. *Id.* at ¶54. Mr. Ortega has no knowledge of this incident and only learned of it upon review of the PSI.

Mr. Ortega began exhibiting several behavioral abnormalities around the age of 17. *Id.* He voluntarily reported to a mental hospital to receive consultation and analysis. *Id.* at ¶65. Even though Mr. Ortega self-reported, the hospital required in-patient hospitalization. *Id.* While he cannot recall the entirety of the diagnoses, Mr. Ortega recalls being diagnosed with temporal lobe abnormalities, bipolar disorder, and manic-depressive disorder. *Id.* The hospital prescribed Mr. Ortega with a mixture of lithium, codeine, and perhaps other medications that caused him to exist in a near constant, zombie-like state. *Id.* Mr. Ortega discontinued use of these medications due to their negative side-effects.

Mr. Ortega found it difficult to find gainful employment following his release from prison. *Id.* at ¶67. The inability to provide for his family left him feeling "effeminate and lacking value." *Id.* He took whatever employment opportunities came his way, most recently a dishwasher and delivery drive at John's Pizzeria in Dyer, Indiana. *Id.* at ¶68. He maintained this employment until his arrest. *Id.* Mr. Ortega is hoping to further advance his training in the tool and die trade and gain an education in culinary arts during his pending imprisonment to create additional job prospects upon his release. *Id.* at ¶77.

Traditionally, Mr. Ortega has buried his traumatic past and the resulting complications. In 2008 or 2009, Mr. Ortega's partner asked him about sex with minors and showed him images of child pornography. *Id.* at ¶68. Upon recent reflection, Mr. Ortega believes this incident "opened up a door [he] had shut long ago," and started him down the path that ultimately led to the conduct exhibited in this case. *Id.* In a certain sense, it seems as though Mr. Ortega is relieved that his demons have now been put out in the open. Mr. Ortega is "scared as hell" to be returning to federal prison as a sex offender, noting that "…[he] just need[s] to survive in order to get the professional help [he] need[s]." *Id.* at ¶20.

Mr. Ortega voiced his frustration and disappointment in himself throughout the PSI and this prosecution. He acknowledged the appalling nature of his contact and exhibits disgust in

himself. Mr. Ortega has advised undersigned counsel numerous times that he feels like a "monster," a failure in society, and a terrible role-model for his family. Despite this, he is hoping to take full advantage of his time incarcerated to be able to set himself up with as many opportunities as possible to leave behind a better legacy for his family.

Mr. Ortega is not ignorant of his current reality. He expresses no naivety when discussing the seriousness of his convictions and potential negative implications his conduct could have on society. Mr. Ortega has known from early on in this matter that he is facing very significant terms of imprisonment and supervised release. Mr. Ortega cooperated with law enforcement, accepted responsibility early on, and did not litigate the case against him in any capacity.

Mr. Ortega's mother describes him as being a "very good-hearted person who has always been very kind, caring, and loving to his family." [PSI: ¶50]. Ms. Ortega was shocked to learn of the defendant's conduct in this matter, noting that "if somebody on the street would have come up to me and told me what Ron did, I would have called them a bold-faced liar." *Id.* at ¶52]. She stated that her son has a conscience and "understands the wrongfulness and harmfulness of his actions." *Id.*

## C. 18 U.S.C. § 3553(a)(2) Considerations

### 1. Seriousness of the Offense

While Lisa and Kay do not represent actual, living individuals, Mr. Ortega understood them to be. Congress made clear that regardless of whether the individual Mr. Ortega communicated with existed, the offense is to be taken very seriously. The parties understand and agree that Count One carries a maximum term of imprisonment of 30 years and a fine of $250,000. [R. 18, ¶ 6]. This Count requires a mandatory minimum of 15 years imprisonment. The charge further contemplates a mandatory special assessment of $100, at least 5 years of supervised release, and a maximum of a lifetime of supervised release. *Id.*

### 2. Just Punishment; Deterrence; Needed Correctional Treatment

The mandatory minimum sentence will cause Mr. Ortega to miss out on most of his youngest daughter's development. His mother very well might not survive the period of his incarceration. Mr. Ortega went into custody at the age of 47, and the mandatory minimum will cause him to remain incarcerated into his 60s and supervised beyond that. The 15-years imprisonment is approximately two and a half times lengthier than any previous period of

5

incarceration Mr. Ortega has served. Mr. Ortega has a proven history of being able to comply with conditions of supervised release without issue [PSI: 8, ¶37]

Mr. Ortega is not in a healthy place in life, physically or mentally. He has been struggling with essentially unregulated diabetes and high blood pressure for the past 15 years. [PSI: 12, ¶61]. He has not received any professional education or treatment regarding the effects of his past traumas outside a brief period of in-patient hospitalization when he was 17. *Id.* at 65. Mr. Ortega intends to utilize the medical and mental health treatment offered by the Bureau of Prisons to become a healthier and better person.

### 3. Protection of the Public

The public requires protection from the types of behavior Mr. Ortega engaged in. The 15-year period of imprisonment followed by a lengthy term of supervision with the proposed conditions adequately protects the public.

### D. Application of Sentencing Guidelines

Mr. Ortega agrees with the guideline calculation contained with the PSI: a total offense level of 35 within Category I results in a guideline imprisonment recommendation of 168 months to 210 months. [PSI: ¶88]. However, the statutory authorized sentence minimum is 15 years, which effectively results in a guideline imprisonment recommendation of 180 months to 210 months pursuant to USSG § 5G1.1(c)(2). *Id.*

Count One of the Indictment requires the Court to impose a term of supervised release of 5 years to life, pursuant to 18 U.S.C. § 3583(k). Therefore, the guideline recommendation for supervised release is 5 years to life pursuant to USSG § 5D1.2(b)(2). [PSI: ¶91]. Because the offense is a sex offense, the guidelines recommend the maximum term of supervised release. *Id.*

### III. CONCLUSION

Mr. Ortega engaged in serious criminal conduct that demands punishment and protection of the community. While Mr. Ortega's past experiences and failure to address them in a professional capacity likely contributed to his actions, he does not use them as an excuse. Mr. Ortega understands that he is a grown man with obligations to his family and society. Mr. Ortega did not litigate this matter in any capacity and takes ownership of the actions and decisions he made. Mr. Ortega understands that he himself is responsible for creating his current circumstances. Mr. Ortega appreciates that it is a direct result of his own actions that he disappointed his mother and young daughter and will not be available to care for them. Mr. Ortega hopes to make the best

of his imprisonment and supervised release to obtain the professional help and vocational skills necessary for him lead the most successful life he can.

The mandatory minimum sentence of 15 years imprisonment, followed by a lengthy term of supervised release with the conditions outlined in the report, is a sentence sufficient, but not greater than necessary, to provide just punishment, deterrence, protection of the public, and provision of correctional treatment.

Dated at Green Bay, Wisconsin on Wednesday, January 20, 2021.

Respectfully submitted,

*/s/ Scott L. Stebbins*
Scott L. Stebbins
Attorney for Defendant
WI Bar #1097832
Law Offices of Crowell & Schuchart, LLC
130 East Walnut Street, 7th Floor
Green Bay, WI 54301
Telephone: 920-430-3090
Fax: 920-436-9367
Email: scott@titletownattorney.com

*/s/ Lee D. Schuchart*
Lee D. Schuchart
Attorney for Defendant
WI Bar #1092603
Law Offices of Crowell & Schuchart, LLC
130 E. Walnut Street – 7th floor
Green Bay, WI 54301
Telephone: 920-430-3090
Fax: 920-436-9367
Email: lee@titletownattorney.com